**UNITED STATES of America,
Plaintiff,**

v.

**Harry L. HAULMAN and Harry W.
Bevan, Defendants.**

**No. 43196.**

United States District Court
E. D. Michigan, S. D.

June 25, 1968.

Kenneth G. McIntyre, Asst. U. S. Atty., for plaintiff.

James F. Finn and Victor G. Hanson, Detroit, Mich., for defendants.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT

KEITH, District Judge.

The defendants, Harry L. Haulman and Harry W. Bevan, by their attorneys, James F. Finn and Victor G. Hanson, moved on March 15, 1968, to dismiss the indictment in the above captioned case because they claim generally that the defendants have been denied their constitutional rights to a speedy trial; that the Government has failed to comply with Rule 48(b) of the Federal Rules of Criminal Procedure, and that they have

not been afforded due process under the Fifth Amendment.

On January 21, 1964, the Federal Grand Jury for the Eastern District of Michigan designated Mr. Thomas Lindsey, a long-time employee of the Federal Deposit Insurance Corporation and a Banking Expert, as its investigatory agent for the purposes of examining the records of the Warren (Michigan) Bank to determine whether there were any irregularities traceable to organized criminal influences at said bank. On that same day Mr. Lindsey served the Grand Jury's Subpoena upon the then President of the Warren Bank, Harry L. Haulman, requesting that certain bank records be made available to Mr. Lindsey for his inspection. Mr. Lindsey asked Mr. Haulman to go before the Grand Jury on September 16, 1964, and Mr. Haulman appeared as requested.

Mr. Lindsey completed his on the scene examination of examining Warren Bank's records by August of 1964. He continued to examine Xerox copies of the bank's records at the United States Attorneys' Office until December, 1964. On November 20, 1964, December 16, 1964 and January 13, 1965, defendant Haulman appeared before the Grand Jury at which time he was questioned about certain irregularities apparently traceable to him which were discovered by Mr. Lindsey during the course of his examination. Mr. Bevan and other witnesses also appeared before the Grand Jury on November 20, 1964, and December 16, 1964.

Mr. Lindsey was assigned to non-related F.D.I.C. cases between January and September, 1965. In September, 1965, he returned to Detroit and by early November, 1965, he completed his analysis of the bank records and made his report to William Merrill, then Assistant United States Attorney in charge of the case. On November 8, 1965, Merrill, based upon the analysis of the Grand Jury Testimony and Mr. Lindsey's findings, recommended to United States Attorney, Lawrence Gubow, that

defendants, Haulman and Bevan be prosecuted for federal banking violations.

During the course of the investigation of the Warren Bank by Mr. Lindsey, three persons died who the defendants in this cause claim would have been called as witnesses on their behalf. In April, 1965, James V. Bellanca and William Collins died. Mr. Bellanca was the General Counsel of the Warren Bank from January, 1962 to April, 1965, and a director, and the largest shareholder of said bank for that period. Mr. Collins was the President of Contract Life Underwriters, Inc., and it is alleged that he would have testified about the $25,000 loan to that Company which is involved in Count Two and Three of the indictment. Also, William Romano, who died in April, 1966, was the founder and organizer of the Warren Bank, and served as Director and Chairman of the Board from 1956 to 1960, and he again served as a Director from 1962 to April 1966. Also during 1966, he again served as Chairman of the Board of the Bank.

On May 4, 1966, the Grand Jury returned an eight count indictment naming defendant Haulman in all eight counts and defendant Bevan in three counts.

On the same day, defendant Haulman was arraigned before the then District Court Judge Wade H. McCree, Jr., at which time he pleaded not guilty and was released on a $1,000 personal bond. Defendant Bevan was arraigned before Judge McCree on May 5, 1966, at which time he too entered a plea of not guilty. He was also released on a $1,000 personal bond. The case was assigned to United States District Judge Fred W. Kaess. On May 9, 1966, Judge Kaess set the case for trial on August 9, 1966, without either defendant having moved for a speedy trial.

A few weeks later after the case was set, defense counsel Hanson requested a six months adjournment for the purpose of filing appropriate motions. His request was granted. On May 23, 1967, a Motion to Dismiss and other Discovery Motions were filed by defense counsel

Finn, who on the same day replaced Mr. Joseph Sullivan as Counsel. In the meantime, Assistant United States Attorney Merrill had resigned to run for Congress.

Mr. Joel Shere of the United States Attorneys Office was assigned the task of briefing the issue raised by defense Counsels May 23, 1967 motions. After the briefs were filed and the issues argued, Judge Kaess on July 23, 1967, entered an Order dismissing Counts I, II, III, VII and VIII of the May 4, 1966 indictment. The basis of this decision apparently was that the counts failed to allege a crime against the United States. This ruling had the effect of a complete dismissal of charges against defendant Bevan since the remaining counts (4, 5, and 6) alleged criminal acts against only defendant Haulman.

After Judge Kaess' July 3, 1967 ruling, defendant Haulman, for the first time demanded a speedy trial. The trial on the remaining three counts was set for August 8, 1967.

Assistant United States Attorney Shere was in July, 1967 the Assistant in charge of all Civil Rights cases and Intelligence in this district. Because of the wide spread civil disorder in Detroit beginning on July 23, 1967, and continuing thereafter, he was not able to devote any more than a minimal amount of time in final preparation for the August 8, 1967 trial. In addition, he had given notice that he was resigning effective September 1, 1967. As a result, the case was assigned to Assistant United States Attorney Kenneth G. McIntyre on approximately August 3, 1967. On August 7, 1967, the Government moved to dismiss the three remaining counts, and the Court granted said Motion. In connection with this Motion for Dismissal, the Assistant United States Attorney stated:

"At this time, after having reviewed my files and the files of the investigative agencies involved in this case, and having talked it over with the United States Attorney here, Mr. Gubow, the Government feels that, based on the presentable evidence, the evidence now at our disposal, that the remaining three counts in this indictment cannot be proved beyond a reasonable doubt. The Government is presently considering the possibility of re-presenting the information developed during our initial investigation to the present Grand Jury for its consideration. This decision has not been finalized as yet, but in any event, based upon my review of the investigative reports and of the present evidence at our disposal, I move that the remaining three counts in this indictment be dismissed."

On November 7, 1967, the defendant, Harry L. Haulman, filed a Petition requesting the Court to enjoin the United States Attorney from re-presenting the above matter to the Grand Jury, stating his grounds that Rule 48(b) of the Federal Rules of Criminal Procedure should operate as a bar to a subsequent indictment because of the unnecessary delay involved from the time the Government first considered Harry L. Haulman to be a defendant, to the date of May 4, 1966 indictment.

The Court refused to take jurisdiction, stating that said petition was premature. The Court indicated, however, that it might rule differently if jurisdiction were established. In proceedings held before the Honorable Fred W. Kaess on November 27, 1967, the Court stated as follows:

The Court: "There is one thing that disturbs me about the investigation of this situation. There being others here present I do not want to mention names, but this has been going on for years. * * *"

The Court: "* * * I do not think that it takes that long to investigate a small institution of this kind. If it could not be done in three months, it could have been done in six months. *. * *"

The Court: "The reason I say that is because it has some serious aspects beyond just what we are talking about

here. There were three or four occasions that existed where counsel came in to all the Judges in chambers and asked that somewhere, sometime this investigation cease. This was over a year ago. It might even be two years ago, that somewhere a reasonable time be set for an investigation. Now it is still going on after all this time, 1964 to 1967 is three years, I guess, or maybe it will be four years pretty soon, since they began it. Now, how long is it to continue?"

The Court: "Don't you think that even the most difficult case does not take four years? * * * I will tell you frankly; because I think the Government has had ample time in which to check this thing out. Bank examiners go through a place and do an excellent job within three or four weeks, and at the most three or four months, but not three or four years."

The Court: "Well, as much as I lean, tend toward Mr. Finn's expression, I do not think the Court should interfere with an investigation where we do not know what the purpose of it is, or what kind of a charge might come out; and I certainly appreciate your position, but I think we are in a premature situation."

The Court: "Yes. And may I say that I am totally in sympathy with you because I think this has gone way beyond, in my mind. * * *"

The Court: "I trust you on this point. It is one of the reasons that I am going against Mr. Finn. My inclination is to go along with him, I will tell you frankly; because I think the Government has had ample time in which to check this thing out. Bank examiners go through a place and do an excellent job within three or four weeks, and at the most three or four months, but not three or four years."

In the Fall of 1967, Donald Barnard, who was the oldest employee of the Warren Bank having been there since 1957, died. Mr. Barnard held many positions at the Bank, and it is alleged that his knowledge of the Warren Bank's records were more extensive than any other employee. Joseph Trenkle who died in late 1967 was Director of the Warren Bank from January of 1963 to May, 1965, and it is alleged that he attended every meeting of the Board of Directors of the Warren Bank during the period of 1963 and 1964. On December 20, 1967, Harry L. Haulman and Harry W. Bevan were again charged with violating Federal Banking Laws by an eight count indictment. Jere Cavanaugh died in January, 1968. He was Vice-President of the Irving Trust Company, New York City, from 1957 to 1967 and was in charge of the Michigan District during 1962 and 1963, and, as such, had the Warren Bank under his supervision.

As noted above, the defendants claim that their right to a speedy trial and also their rights under Rule 48(b) have been denied due to the length of time they were under investigation and indictment. In addition to a mere lapse of time, the defendants assert that they have been prejudiced by this delay because six persons who they allege would have been called as witnesses on their behalf have died subsequent to the commencement of the investigation. Three of these witnesses have died prior to the time that the original indictment was returned on May 4, 1966. Two of the witnesses have died subsequent to the time that the remaining parts of the original indictment were dismissed.

The Court has considered carefully the defendants' proffers of proof as to what its potential witnesses might have testified to had they lived and the government's interpretation of the significance of said testimony. Some of these witnesses were apparently intimately involved with the management of the Warren Bank, and may have aided the defendants in defending themselves significantly. Cavanaugh and Collins had knowledge of certain transactions which are alleged in the indictment to be in violation of Federal Banking Laws. In context of a Motion such as the one involved herein, the Court cannot reasonably be expected to weigh and bal-

ance precisely the significance of the testimony of these witnesses. "It may well be that other satisfactory witnesses are available, but it is not the Government's prerogative to select which witnesses the defense can or cannot call, and when the Government's delay produces a result that amounts to such selection, the Court will consider the defendants to have been prejudiced." United States v. Parrot et al., 248 F. Supp. 196, 205 (D.C.D.C.1965). The Court finds that because these six persons died, the defendants' selection of witnesses was reduced, and accordingly, that prejudice resulted to them as a result thereof.

In support of its position that this motion be denied, the Government places considerable reliance on Hoopengarner v. United States, 270 F.2d 465 (6th Cir., 1959), and Parker v. United States, 252 F.2d 680, 681 (6th Cir., 1958). The Court agrees with the Government that these cases hold that the Sixth Amendment right to a speedy trial and the protection afforded an accused under Rule 48(b) are not applicable to the investigation prior to the time an accused is in some way held to answer a specific charge, whether by complaint or indictment. In this case, after a lengthy investigation of the Warren Bank, the defendants were held to answer. If this is all that had transpired and the defendants had been brought to trial on the original indictment the principles stated in *Hoopengarner* and *Parker* Cases, discussed above, would appear controlling on the Sixth Amendment and Rule 48(b) questions. However, for reasons stated above, the original indictment against the named defendants was dismissed, and the Court has before it a second indictment which is substantially identical to the original one. In *Hoopengarner*, the Court stated specifically at 270 F.2d page 469 that "[T]here was no unnecessary delay in the prosecution of the defendant after he had been held to answer." Similarly, in *Parker* there was no claim of such a delay. It is noteworthy in this regard, that in the instant

case, the Government requested that the three remaining counts of the original indictment be dismissed because they could not be proved beyond a reasonable doubt after a demand for a Jury Trial. Thus, the Court finds both *Hoopengarner* and *Parker* distinguishable from a situation before it, and does not agree with the Government's position that it necessarily follows from *Hoppengarner* and *Parker* that the period January, 1964 to May, 1966 is irrelevant on the general question as to whether the defendant's motion should be granted.

Also, the factual pattern involved in this case raises serious questions of whether or not the defendants have been afforded due process under the Fifth Amendment. In United States v. Feinberg, 383 F.2d 60 (2d Cir., 1967), the Court stated at page 65 that, "[T]hough prejudice is not to be presumed, it may well be that pre-arrest delay may impair the capacity of the accused to prepare his defense, and if so, such impairment may raise a due process claim under the Fifth Amendment, see Powell v. United States, 122 U.S.App.D.C. 229, 352 F.2d 705, 707 (1965), * * *." In Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965), the Court of Appeals for the District of Columbia reversed a conviction for a Narcotics violation on the ground of denial of due process because the defendant was unable to defend himself where the complaint against him was not sworn out until seven months after the alleged offense. The Court in Ross did not attempt " * * * to define the precise reach of the Fifth Amendment in this context, * * *," but indicated that a question of this nature must be resolved by balancing the needs of the community in effective law enforcement with those of a citizen facing loss of his liberty by reason of criminal charges. The Government's brief and Statement of Facts is totally void of any showing that the substantial pre-indictment delay in this case was necessary, for the effective administration of justice. On the contrary, the assignment of Mr. Lindsey to nonrelated

matters for nine months, delay in presenting the case to the Grand Jury once prosecution was recommended, and personnel changes in the United States District Attorneys' Office seemed to be accountable for a substantial part of this delay. In addition, Judge Kaess, as the above quoted material indicates, determined that the actual audit of the Warren Bank was considerably longer than might reasonably be expected.

█ In light of the above, Rule 48(b) and the Sixth Amendment have particular significance to individuals such as those involved in the instant case. The Committee note to Rule 48(b) states that "[T]his rule is a restatement of the inherent power of the Court to dismiss a case for want of prosecution. Ex parte Altman, 334 F.Supp. 106 (S.D.Cal.)" A Motion to Dismiss pursuant to Rule 48(b) is addressed to the discretion of the Trial Court. Nickens v. United States, 116 U.S.App.D.C. 338, 323 F.2d 808, cert. den. 379 U.S. 905, 85 S.Ct. 198, 13 L.Ed.2d 178 (1963), Terlikowski v. United States, 379 F.2d 501, 504 (8th Cir.1967). In Kolpfer v. State of North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), the Supreme Court held that by indefinitely postponing prosecution on the indictment, over the accused's objection and without stated justification, the state denied petitioner the right to a speedy trial guaranteed to him by the Sixth and Fourteenth Amendments of the Federal Constitution. The facts before this Court are different than those in *Klopfer*, but the statement of the Court at page 222 of its opinion, 87 S.Ct. 988, provides this Court with a guide to evaluating the question before it.

The relevant portion of page 222, 87 S.Ct. of page 993 is as follows:

" * * * The pendency of the indictment may subject him to public scorn, and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes. By indefinitely prolonging this oppression, as well as the 'anxiety and concern accompanying public accusation,' the criminal procedure condoned in this case by the Supreme Court of North Carolina clearly denies the petitioner the right to a speedy trial which we hold is guaranteed to him by the Sixth Amendment of the Constitution of the United States."

As contrasted to United States ex rel. Williams v. Deegan, 279 F.Supp. 53, D.C. S.D.N.Y. (1967) which also considered at page 57 the above quoted language from *Klopfer*, the Court cannot conclude that " * * *, the facts strongly support the prosecution's contention that they did all in their power to see this case was promptly tried." On the contrary, this record indicates quite the opposite. In addition, the instant matter is distinguishable from cases such as United States v. Ewell, 383 U.S. 116, at page 122, 86 S.Ct. 773, at page 777, 15 L.Ed.2d 627 (1966) where the Court found that, " * * * The appellees' claim of possible prejudice in defending themselves is unsubstantial, speculative and premature. They mention no specific evidence which has actually disappeared or has been lost, no witnesses who are known to have disappeared." In view of its finding that prejudice has resulted to the defendants as a result of the delay attributable to the Prosecutor, the Court takes judicial notice of the hardship, anxiety and anguish which these defendants have suffered as a result of the extended investigation and prosecution of this matter. In this regard, it is alleged that Mr. Haulman because of the long investigation, and the charges against him being known throughout the Banking field, sold out his interest in the Warren Bank, and, at the present time, is unable to obtain employment in the Banking field which has been his only type of employment for many years.

█ The Court believes that the authorities cited above require it to review the entire record of this case in connection with defendants' motion and not to view any particular aspect of it in the abstract. Viewing the matter as a

whole, the Court finds that defendants were not afforded due process of law as required by the Fifth Amendment of our Constitution in that the Government's delay in bringing them to trial has prejudiced their ability to defend themselves. Also, for these same reasons, the Court finds that the Sixth Amendment and Rule 48(b) bar the Government from proceeding in this case, and accordingly:

It is ordered that the defendants' motion be and is hereby granted, and that the indictment in the instant case be dismissed with prejudice.