**STATE of Missouri, Respondent,**

v.

**Richard THOMAS, Appellant.**

**No. 58557.**

Supreme Court of Missouri, Division No. 1.

Nov. 10, 1975.

Allen I. Harris, Clayton, for appellant.

John C. Danforth, Atty. Gen. by Philip M. Koppe, Asst. Atty. Gen., for respondent.

DONNELLY, Judge.

Appellant, Richard Thomas, was convicted by a jury in the Circuit Court of St. Louis County of stealing more than fifty dollars, and was sentenced under the Habitual Criminal Act to imprisonment for five years. Following rendition of judgment and imposition of sentence on January 18, 1974, an appeal was taken to this Court.

This Court does not have jurisdiction of this case under Art. V, § 3, Const. of Missouri. We retain and decide the case for the reasons stated in *Foremost-McKesson, Inc. v. Davis,* 488 S.W.2d 193, 196 (Mo. banc 1972).

Appellant and another were convicted of stealing two television sets from a Katz Drug Store. A Katz employee observed the television sets being put in a trash can by two men, and being carried away. He identified appellant as one of the men involved. A second Katz employee obtained the license number of the car in which appellant was later stopped by police. This employee also identified appellant. Two police officers testified that they stopped the car in which appellant was riding. They testified that there were only two people in the car, that appellant was one of them, and that two television sets and a trash can were in the car.

All of these events occurred on May 23, 1971. Appellant was arrested that day but released after being held for twenty hours without being charged. Shortly thereafter a capias warrant was issued for appellant's arrest. The warrant was executed nearly a year later on May 3, 1972. In the intervening year appellant had been arrested on unrelated charges five times. He had been living in St. Louis during the entire year.

On October 18, 1972, appellant was discharged at a preliminary hearing for want of probable cause. On November 22, 1972, the state procured a grand jury indictment. Appellant was arrested pursuant to the indictment January 30, 1973. He was arraigned March 12, 1973, and trial began September 10, 1973.

Appellant first asserts that he was denied due process of law because of the lapse of time between the offense and his arrest pursuant to the grand jury indictment. He contends that he was prejudiced by this delay of some 20 months because it resulted in his being unable to produce exculpatory witnesses. He states that he would have called Henry Phillips and Nelson Roberts. Henry Phillips was convicted of the crime with which appellant is charged. He was incarcerated and released before appellant was arrested on the indictment. Nelson Roberts has gone to New York State and his whereabouts are unknown. Appellant states that he could have found both these witnesses shortly after May 23, 1971. He contends that Phillips and Roberts committed the theft; that he was asleep in the car during the entire episode; and that these two witnesses would have so testified.

In *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971), the Court spoke of the problem as follows:

"Thus, the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. Cf. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). However, we need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution. Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessar-

ily involve a delicate judgment based on the circumstances of each case. It would be unwise at this juncture to attempt to forecast our decision in such cases."

Appellant cites *United States v. Kleinbard,* 333. F.Supp. 699 (E.D.Pa.1971); *United States v. Haulman,* 288 F.Supp. 775 (E.D.Mich.1968); and *Ross v. United States,* 121 U.S.App.D.C. 233, 349 F.2d 210 (1965). In *Kleinbard,* the government delayed prosecution in order to protect undercover operations. During the delay a key witness was committed to a mental institution. The witness had been the liaison between defendant and the government for the sale of drugs. Defendant made a "plausible" claim of being unable to remember the events. The missing witness was shown to be important and the case was dismissed. In *Haulman,* the prosecution arose from alleged violations of banking laws. The delay was almost two years. In the intervening time six witnesses died. All were "intimately" associated with the banking operations. The court held due process was violated because: (1) there was no good reason for the government's delay, and (2) actual prejudice to the defendant's ability to make his defense was shown. In *Ross,* defendant sold narcotics to a government agent on May 10, 1972. A complaint was filed December 5, 1972. The court found that defendant was unable to remember specific events after that lapse of time and therefore was unable to present an effective defense. The government witness was also unable to independently remember events and relied on his notes taken at the time. The government sought to excuse the delay by saying it was because there was a continuing investigation by an undercover agent which could have been jeopardized by filing a complaint. The court recognized that this was a legitimate government interest, but held that it must be balanced against the rights of the defendant. The court relied on three factors in reversing the conviction: (1) there was a purposeful delay by the government; (2) defendant made a plausible claim of inability to remember and thus showed prejudice to his defense; (3) the government case was not very strong.

■ In our opinion, appellant, Richard Thomas, was not denied due process in the circumstances in this case. The evidence of his guilt is substantial, a finding of actual prejudice would be conjectural, and all parties agreed at trial that the delay was not "an intentional device to gain tactical advantage over the accused." The point is without merit.

Appellant's second assertion is "that the court erred in failing to sustain defendant's motion to dismiss for the reason the defendant was originally discharged at a preliminary hearing, and unless the state adduced more and additional evidence which it could not through due diligence have introduced at the first hearing the determination as to probable cause made by the grand jury was improper."

■ The prevailing general rule, which we adopt, is stated in 21 Am.Jur.2d Criminal Law, § 450 (1965), at 452–453, as follows:

"If the magistrate discharges the accused after the preliminary examination, the prosecuting attorney is without authority to file an information for the offense, but the discharge * * * does not bar a prosecution of the alleged offense by indictment."

■ The reasoning of the opinions written in establishing the rule is (1) that the preliminary hearing does not place the accused once in jeopardy, (2) that there is no legal connection between the preliminary hearing and a subsequent indictment, and (3) that since the state cannot appeal a dismissal at a preliminary hearing, it would frustrate public policy to deny the state a further opportunity to prosecute. *Ex parte Clarke,* 54 Cal. 412; *People v. Grace,* 88 Cal.App. 222, 228, 263 P. 306 (1928); *United States v. Levy,* 268 U.S. 390, 393, 45 S.Ct. 516, 69 L.Ed. 1010 (1925); *Tell v. Wolke,* 21 Wis.2d 613, 124 N.W.2d 655, 659 (1963);

*State ex rel. Fallis v. Caldwell,* 498 P.2d 426 (Okl.Cr.1972); *State v. Maki,* 291 Minn. 427, 192 N.W.2d 811 (1971); *State v. Boykin,* 113 N.J.Super. 594, 274 A.2d 620 (1971); *Commonwealth v. Britt,* 362 Mass. 325, 285 N.E.2d 780 (1972); *People v. Uhlemann,* 9 Cal.3d 662, 108 Cal.Rptr. 657, 511 P.2d 609 (1973); *United States v. Dobbs,* 506 F.2d 445 (5th Cir. 1975); *United States v. Kysar,* 459 F.2d 422 (10th Cir. 1972).

Appellant next contends that Missouri grand jury procedure is unconstitutional because "it does not afford a defendant a right to be represented at a critical stage in a criminal prosecution."

■ This contention was answered by Division No. 2 of this Court in *State v. Tressler,* 503 S.W.2d 13, 15 (Mo.1973):

"Defendant's position is not supported by decisions of the federal courts. *Directory Services, Inc. v. United States,* 353 F.2d 299 (8th Cir. 1965); *United States v. Scully,* 225 F.2d 113 (2nd Cir. 1955); *United States v. Levinson,* 405 F.2d 971 (6th Cir. 1968); *Perrone v. United States,* 416 F.2d 464 (2nd Cir. 1969). Accordingly, we overrule the contention that absence of counsel before the grand jury violated his federally guaranteed constitutional rights and therefore entitled him to have the indictment quashed."

Appellant's next point is that the court could not proceed under the Habitual Criminal Act because the prosecutor told the jury on voir dire "that they would have the right to assess the penalty imposed in this case."

■ This point is asserted without citation of authority and with one sentence of argument. It is not properly presented for appellate review. Rule 84.04(d); *State v. Warters,* 457 S.W.2d 808 (Mo.1970). In any event, there was no prosecutorial misconduct on voir dire in this case. The prosecutor told the jury that they "*could* be charged with the duty * * * of determining punishment." Had the state failed to prove a prior felony conviction, the jury

would have been called on to assess punishment. The prosecutor's statements were not prejudicial to appellant.

■ Appellant next contends that his motions for acquittal should have been sustained for "the reason that there was no evidence that any property had, in fact, been stolen." The motions for acquittal must be viewed on appeal in the light most favorable to the state. The state is entitled to the benefit of all reasonable inferences. *State v. Wiley,* 522 S.W.2d 281 at 293 (Mo. banc 1975).

■ Appellant cites *State v. Celmars,* 399 S.W.2d 145 (Mo.App.1966) for the proposition that the state must show that property was stolen as part of the *corpus delicti.* This is established law. However, in *Celmars,* the evidence showed that defendant was found outside a store with several cartons of cigarettes which were in a sack with the store's name on it, but there was no evidence to refute defendant's claim that some other person had sold the cigarettes to him. In this case, the state produced a Katz employee (McGahan) who observed two men placing two television cartons in a trash can. McGahan later identified appellant as one of the two men. Another witness (Volz) observed the trash can being pulled out of the store as though it were very heavy. She was personally aware of the light-weight nature of the trash can. A third witness (Hotop) testified that he observed a broken hasp on the stockroom door where the televisions were stored. He further testified that when he looked in the storeroom he noticed empty spaces on the shelves that had not been there that morning. Since it was a Sunday, he knew that no television sets had been sold. This evidence supports an inference that two television sets were stolen. The point is without merit.

Appellant's last point is that the state committed reversible error by giving the following instruction:

"You are further instructed that the Information in Lieu of Indictment con-

tains the formal statement of the charge, but is not to be taken as any evidence of defendant's guilt.

"The law presumes the defendant to be innocent and this presumption continues until it has been overcome by the evidence which proves the defendant's guilt beyond a reasonable doubt; and the burden of proving the defendant's guilt rests with the State.

"If, however, this presumption has been overcome by the evidence and the guilt of the defendant proved beyond a reasonable doubt, your duty is to convict.

"If, upon consideration of all the evidence, you have a reasonable doubt of a defendant's guilt, you should acquit; but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching the defendant's guilt, and not a mere possibility of the defendant's innocence."

Appellant objects to the definition of reasonable doubt given in the last paragraph of the instruction. He contends that it violates MAI–CR 2.20. This case was tried in September, 1973. MAI–CR became effective January 1, 1974. While the definition used in this case has been frequently criticized, it has been repeatedly approved. *State v. Scott,* 491 S.W.2d 514 (Mo. banc 1973). MAI–CR is prospective in its operation. *State v. Tindall,* 496 S.W.2d 267 (Mo. App.1973).

The judgment is affirmed.