OPINION OF THE COURT
Fuchsberg, J.
Defendant Gabriel Hodge has been convicted of the felonies of burglary in the third degree and escape in the first degree, each arising from an incident unrelated to the other. On appeal from an Appellate Division order of affirmance, the main issue we confront is whether he is entitled to a reversal of the escape conviction because a preindictment preliminary hearing on that charge, held pursuant to GPL 180.10 (subd 2), was conducted in the absence of retained counsel. For the reasons which follow, we hold that he is and that the appropriate corrective action is a new trial.
Hodge, who was then being held at the Schenectady County Jail in connection with a multicount indictment, was arraigned on a charge of escape in the Princetown Town Court. The case was adjourned for a week in order to afford him an opportunity to retain an attorney.
On the appointed date, the defendant appeared alone, but informed the court that he had retained counsel, whose name he furnished to the court and for whose absence on this day he was unable to account. When defendant de *317 murred at having the hearing go forward without the presence of his lawyer, the court insisted, “You have had a chance to obtain counsel Your counsel is not present. So we are going to proceed without your counsel for this matter.”
In this case the handicap this represented is not dependent on inference alone. The record reveals, for instance, that during the examination of one of the People’s witnesses, when the defendant was offered an opportunity to examine a document before it was received into evidence, he stated, “I am not an attorney. So I have never seen a preliminary hearing conducted without an attorney present. So it would be senseless to show this to me, you know.” At another point, offered an opportunity to cross-examine, he responded, “Like I have said before, I have never seen another preliminary hearing being conducted without a lawyer being present,” To this the court rejoined, “You were informed of your rights to an attorney. You have talked to your attorney in the meantime and your attorney is not present. In the criminal procedure law, if your attorney is not present after adequate time the court can proceed to examine the case.”*
At the conclusion of the hearing, the court found that there was reasonable ground to believe that the crime charged had been committed. The defendant was then bound over for the Grand Jury, which was to indict him for escape in the first degree, and, after proceeding to trial with counsel, he was convicted. Later, he separately pleaded guilty to burglary in the third degree in satisfaction of all the charges on which he was being held at the time he had been arraigned for the escape.
We begin our analysis with the observation that, since most constitutional rights are not self-executing, the right to counsel may be the most basic of all. Conscious of its role, in criminal cases in particular we have called for “the *318 highest degree of vigilance in safeguarding the right of an accused to have the assistance of an attorney at every stage of the legal proceedings against him” (People v Cunningham, 49 NY2d 203, 207). And, in so protecting the right to a lawyer’s assistance from the time the criminal process is initiated (see People v Settles, 46 NY2d 154, 161), an explicit and implicit goal is that a system which ideally seeks equal representation for the State and for the defendant should move in that direction in fact as well as in theory.
With these concerns in mind, it is hardly surprising that the Supreme Court has ruled that a preliminary hearing is “a ‘critical stage’ of the State’s criminal process”, thus triggering the United States Constitution’s guarantee that a defendant be afforded “the guiding hand of counsel” (Coleman v Alabama, 399 US 1, 9). After all, a preliminary hearing is no vestigial remnant of an earlier day. It has many functions besides the obvious formal ones, such as reduction of excessive charges, prompt arrangement for release where appropriate and, above all, early screening of unjustifiable and .unprovable charges against the innocent.
In a very real sense, as scholars and practitioners agree, since the prosecutor must present proof of every element of the crime claimed to have been committed, no matter how skeletally, the preliminary hearing conceptually and pragmatically may serve as a virtual minitrial of the prima facie case (see Amsterdam, Segal & Miller, Trial Manual for the Defense of Criminal Cases [3d ed, 1974], § 139 et seq.J. In its presentation, the identity of witnesses, to greater or lesser degree, testimonial details and exhibits, perforce will be disclosed. Especially because discovery and deposition, by and large, are not available in criminal cases, this may not only be an unexampled, but a vital opportunity to obtain the equivalent. It has even been suggested that “in practice [it] may provide the defense with the most valuable discovery technique available to him” (United States ex rel. Wheeler v Flood, 269 F Supp 194, 198 [Weinstein, J.]; see Hawkins v Superior Ct., 22 Cal 3d 584, 588-589 [Mosk, J.]).
*319 Since the hearing provides an occasion for appraising witnesses and others who are likely to participate in the ultimate trial, at least as often as not attentive and sensitive counsel gain knowledge and insight that will be of invaluable assistance in the preparation and presentation of the client’s defense. Moreover, judicious exercise may be made of the power of subpoena, which, in the discretion of the court, is available at a preliminary hearing (see CPL 180.60, subd 7; Amsterdam, Segal & Miller Trial Manual for the Defense of Criminal Cases, op. cit., § 142). Its use to call to the stand witnesses whom the People have not elected to summon may present the only way in which a recalcitrant though material witness can be interrogated (Myers v Commonwealth, 363 Mass 843). This may turn out to be a fortunate perpetuation of critical testimony of witnesses who later may not be available for trial (cf. People v Simmons, 36 NY2d 126, 131). Most important, early resort to that time-tested tool for testing truth, cross-examination, in the end may make the difference between conviction and exoneration. (See, generally, Bailey & Rothblatt, Successful Techniques for Criminal Trials, § 25.)
In this perspective, we must reject, as did the Supreme Court in Coleman (399 US, at pp 8-9, supra), the People’s suggestion that, because the Grand Jury subsequently indicted the defendant, any infirmities that occurred at the flawed hearing may be excused. True, the State, by presenting the case to a Grand Jury in the first instance, may bypass the preliminary hearing stage entirely (see, e.g., People v Edwards, 19 Misc 2d 412). And, though a preliminary hearing results in dismissal, it may nevertheless succeed in obtaining an indictment at the hands of a Grand Jury (People ex rel. Hirschberg v Close, 1 NY2d 258; but see Graham & Letwin, The Preliminary Hearing in Los Angeles: Some Field Findings and Legal-Policy Observations, 18 UCLA L Rev 635, 728-731, noting that prosecutors will “resubmit” only in “special” cases such as where additional evidence is subsequently obtained). But, though in the former case the People will have obviated the preliminary hearing process and, in the latter, rendered the favorable disposition ineffectual, once it pursues the path *320 of the preliminary hearing, the defendant becomes entitled to have it conducted with full respect for his right to counsel (cf. Douglas v California, 372 US 353 [no constitutional right to appeal, but if appellate review permitted, counsel must be appointed for indigent criminal defendants] ).
Moreover, by no means did the Grand Jury proceeding compensate for the counselless hearing. It offered, for instance, no opportunity to exercise the privileges of subpoena or of cross-examination or even of having the examination of witnesses conducted in the presence of those whom they accused (see CPL 190.50). That a defendant, in some circumstances, may obtain a transcript of some of the testimony before the Grand Jury is no substitute. For, “Such a transcript will invariably reflect only what the prosecuting attorney permits it to reflect; it is certainly no substitute for the possibility of developing further evidence through a probing cross-examination of prosecution witnesses — a possibility foreclosed with the denial of an adversarial proceeding” (Hawkins v Superior Ct, 22 Cal 3d 584, 589, supra; cf. CPL 670.10; People v Johnson, 51 AD2d 884 [recognizing that preliminary hearing testimony, but not Grand Jury testimony, may on occasions be used at trial when a witness dies or disappears]).
We note too, that the distinction between denial of effective assistance of counsel at trial and, as here, its denial at a preliminary stage of a case is of no consequence. To be sure, in contrast to cases in which the infringement of the right to counsel occurs at trial — where it is “too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial” (Glasser v United States, 315 US 60, 76; see, e.g., People v Arroyave, 49 NY2d 264; People v Felder, 47 NY2d 287) — its denial at a preliminary hearing may very well be subject to harmless error analysis (Coleman v Alabama, 399 US 1, 10-11, supra; Moses v Helgemoe, 562 F2d 62; Schnepp v Hocher, 429 F2d 1096, 1101). In either case, however, it is of constitutional dimension.
But this is not such a case. On the present record, it is impossible to assert “beyond a reasonable doubt” that the deprivation of counsel produced no adverse consequences *321 (Chapman v California, 386 US 18, cited in Coleman v Alabama, supra, at p 11; People v Knapp, 52 NY2d 689). This is particularly clear because the test must be not what the hearing did not produce, but what it might have produced if the defendant’s right to counsel had not been ignored (see Moses v Helgemoe, 562 F2d 62, supra; Schnepp v Hocher, 429 F2d, at p 1101, supra; cf. People v Jones, 47 NY2d 409, 417). So measured, the result of such inquiry would have to be pure speculation.
Since, therefore, there must be a reversal we now turn our attention to the corrective action. Ordinarily, a defect in preliminary proceedings should not vitiate a subsequent indictment (People ex rel. Hirschberg v Close, 1 NY2d 258, supra). In most instances, it could be adequate and appropriate to afford a defendant in such case an opportunity to reopen the preliminary hearing though subsequent to indictment (see Coleman v Burnett, 477 F2d 1187; Ross v Sirica, 380 F2d 557; cf. State v McCloud, 357 So 2d 1132 [La]; contra, United States v Milano, 443 F2d 1022). However, since, in the case before us now, there has been a full trial, on that occasion the People’s case was most certainly “discovered”. On a new trial, the defendant will then be in a position comparable to the one he would have occupied had his right to counsel not been compromised (cf. Schnepp v Hocher, 429 F2d, at p 1101, supra).
Finally, we add that we have considered the other contentions raised by the defendant and find them to be either without merit or rendered academic by our decision on the counsel issue.
Accordingly, the order of the Appellate Division should be modified by reversing the conviction of escape in the first degree, vacating the sentence imposed thereon, and remitting the case to the Schenectady County Court for a new trial in accordance with this opinion, and, as so modified, affirmed.

 In point of fact, the Criminal Procedure Law provides to the contrary. CPL 180.10 (subd 3), expressly states that a defendant has an absolute right to counsel at the hearing and subdivision 4 enjoins the court to “accord the defendant opportunity to exercise such rights and must itself take such affirmative action as is necessary to effectuate them.”