**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Raymond C. NOLINE, Respondent.**

**No. 94SC736.**

Supreme Court of Colorado, En Banc.

June 3, 1996.

Rehearing Denied June 24, 1996.

A. William Ritter, Jr., District Attorney, Second Judicial District, Nathan B. Coats, Chief Deputy District Attorney, Everett Engstrom, Deputy District Attorney, Denver, for Petitioner.

David F. Vela, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for Respondent.

Justice MULLARKEY delivered the Opinion of the Court.

 We granted the People's petition for certiorari in *People v. Noline*, 894 P.2d 1 (Colo.App.1994), to determine whether the grand jury can investigate a case and indict a defendant on felony charges after the county court has held a preliminary hearing and dismissed for lack of probable cause a felony complaint on the same charges and no additional evidence is presented to the grand jury.[1] The court of appeals affirmed the district court's dismissal of the felony charges holding that the People have only two options after dismissal of a felony complaint by the county court: (1) appeal of the county court's determination to the district court, or (2) direct filing of an information in the district court subject to that court's permission. We reverse the decision of the court of appeals and hold that the People are not precluded by any statute, rule, case, or constitutional provision from proceeding with the action taken here. Grand jury presentment after the county court's dismissal is simply an alternate route to an appeal of the county court's probable cause determination to the district court.

## I.

On June 21, 1992, Raymond C. Noline broke into the home of the victim in Denver, Colorado. The victim was out at the time and Noline hid in her basement awaiting her return. Shortly after she returned, a totally naked Noline confronted the victim in her bedroom. She was in the process of undressing and was clad only in her underwear. Noline became sexually aroused and grabbed the victim's wrists. The victim managed to break away after hitting Noline on the head with a high-heeled shoe. Noline fled out the back entrance of the house. He was not immediately apprehended, however, and he continued to stalk the victim.

On August 13, 1992, Noline, naked but for a pair of sneakers, finally was captured in the vicinity of the victim's home. Detective Lotspeich, a Denver police officer, testified at a preliminary hearing before the county

---

1. We granted certiorari on the following issue: Whether Colorado permits a grand jury to indict on felony charges that were originally brought by information but were dismissed for lack of probable cause following preliminary hearing in the county court?

court that during the course of his interview with the defendant, Noline admitted breaking into the victim's home on June 21, 1992, and also admitted going to the victim's residence prior to and after the incident and fantasizing sexually about her. On one prior occasion, Noline had offered to help the victim with some yard work and she refused the offer. Noline further informed Detective Lotspeich that he broke into the victim's home with the intent of having sex with her. Noline explained that he had the impression that they had "bonded" and would enter into a relationship. However, when things didn't work out as he intended them to, he ran out the back entrance while the victim ran out the front screaming for help.

On August 18, 1992, the People filed an information against Noline in the Denver County Court on one count of criminal attempt of first degree sexual assault pursuant to sections 18–2–101, 8B C.R.S. (1986), and 18–3–402, 8B C.R.S. (1986), and one count of second degree burglary pursuant to section 18–4–203, 8B C.R.S (1986). The county court held a preliminary hearing on September 16, 1992, and dismissed the complaint because it found there was no probable cause as to the offenses charged.[2] The county court, however, bound the matter over for first degree criminal trespass pursuant to section 18–4–502, 8B C.R.S. (1995 Supp.), a lesser included offense.

The People did not appeal the decision of the county court as permitted under Crim. P. 5(a)(4)(IV). Nor did the People file a direct information in the district court under Crim. P. 5(a)(4)(V) and 7(c)(2). Instead, on September 17, 1992, the People initiated a motion to dismiss the charge of first degree criminal trespass which was granted by the district court. Earlier on that same day, the People presented the matter to the statutory grand jury impaneled in the City and County of Denver. After hearing the testimony of the victim and Detective Lotspeich, the grand jury returned an indictment against Noline for one count of criminal attempt of first degree sexual assault and one count of second degree burglary. The charges were identical to those previously heard and dismissed by the county court. Although the victim testified before the grand jury and did not testify at the preliminary hearing, the People do not assert that they presented additional or new evidence to the grand jury that was not presented to the county court.[3]

Noline moved to dismiss the indictment on grounds that the People could not submit the matter to the grand jury after the county court dismissed the felony complaint for lack of probable cause after holding a preliminary hearing. The Denver District Court found probable cause to believe that Noline had committed the alleged offenses based on the evidence presented to the grand jury. Nevertheless, the court agreed with Noline and, by order dated January 14, 1993, dismissed the grand jury indictment. The written order specifically stated that Noline's motion to dismiss was granted because the prosecution failed to adhere to Crim. P. 5 and Crim. P. 7. The written order incorporated the oral findings of the district court in which the court made the following statements:

> I would conclude that once the prosecution has proceeded by way of information and

---

**2.** The county court made the following oral ruling:

> At the time the defendant broke in, it had to have been for the purpose of sexually assaulting the victim. If he entered in the delusional belief that his advances would be welcomed, I do not find that he had the requisite intent at the time of entry into the premises. I further do not find that he had the intent to violently assault or meet any of the other requirements for sexual assault. I find that he went in for a sexual liaison, one that is delusional and one which a reasonable person would not expect. I don't find that his interpretation of the facts is reasonable, but I'm not here to decide

> that. I'm here to decide whether or not the defendant committed a crime by conduct that was accompanied by the requisite intent, and I don't find that the requisite intent was there.
> I find that there was an intent to enter the premises without the permission of the homeowner and to remain upon that premises. I find that it fits first-degree trespass; I do not find that it fits burglary or attempted assault.

**3.** *See Holmes v. District Court*, 668 P.2d 11 (Colo. 1983) (presentation of the same evidence in a different form does not meet the requirements of Crim. P. 7(c)(2)).

after a preliminary hearing resulting in dismissal of some of the charges, the remedies then become one of either appealing the decision to the district court or requesting of the district court to allow the direct filing of an information to include the charges previously dismissed at the county court level based on whatever factual basis may exist and which might suggest to the district court that it should exercise its discretion in that fashion.

... [I]t does not appear to me that the structure that we have, at least based on the comments that I've seen and discussed here from the prior courts, that the courts would purport to view the grand jury as some sort of appellate body for either review of county court or district court decisions. I do see that in perhaps making some limitations, the courts have placed those on the prosecution as opposed to otherwise, but in any event, they appear to exist. Otherwise, I would conclude that if in fact at any point in time prior to some jeopardy attaching, there is some district court decision which is inconsistent with the prosecution's position, then the grand jury might become a forum to start over, if you will, and sidestep those particular decisions. I would assume that this is inconsistent with the public policy which is described in the case of *People v. Holmes* as well as *Stokes,* which I have described moments ago.

Under the circumstances, I would conclude then that I should not honor the subsequent activity from the grand jury once it has been previously ruled upon by the county court and once it has been not been [sic] the subject of either an appeal or a request for a direct filing pursuant to the Criminal Rules 7(c)(2).

The court of appeals upheld the district court's dismissal of the grand jury indictment. Judge Taubman dissented stating that no statute or rule prohibits the action taken by the prosecution and the conclusion reached by the court of appeals was against the overwhelming weight of authority in state courts and federal courts. *Noline,* 894 P.2d at 7 (Taubman, J., dissenting). We agree with the reasoning expressed in the dissent.

## II.

### A.

Under article II, section 8 of the constitution, felony prosecutions originally were limited to indictments.[4] However, the General Assembly, pursuant to its powers vested under article II, section 23 of the constitution, created an alternate procedure.[5] The General Assembly has provided the district attorney with three different means to initiate a felony prosecution. The district attorney can: (1) file a felony complaint in the county court; (2) file an information in the district court; or (3) proceed by way of a return of an indictment from the grand jury. § 16–5–101(1)(a)–(c), 8A C.R.S. (1986).

Although historically the first means of prosecuting felonies, the grand jury system is seldom utilized in Colorado. As one commentator has noted:

4. Article II, section 8 of the Colorado Constitution provides that:
Until otherwise provided by law, no person shall, for a felony, be proceeded against criminally otherwise than by indictment, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger. In all other cases, offenses shall be prosecuted criminally by indictment or information.

5. Article II, section 23 of the Colorado Constitution provides that:
The right of trial by jury shall remain inviolate in criminal cases; but a jury in civil cases in all courts, or in criminal cases in courts not of record, may consist of less than twelve persons, as may be prescribed by law. Hereafter a grand jury shall consist of twelve persons, any nine of whom concurring may find an indictment; *provided, the general assembly may change, regulate or abolish the grand jury system;* and provided, further, the right of any person to serve on any jury shall not be denied or abridged on account of sex, and the general assembly may provide by law for the exemption from jury service of persons or classes of persons.
(Emphasis supplied.)

The vast majority of prosecutions in Colorado are initiated by information. Only counties with a population of more than 100,000 have a regularly selected standing grand jury. Special grand juries may, of course, be selected for smaller jurisdictions upon proper motion, but that is a rare occurrence. There are generally only a handful of regularly sitting grand juries in Colorado, and the indictment is utilized in less than 1 percent of all felony cases filed in the state.

H. Jeffrey Bayless, *Grand Jury Reform: The Colorado Experience*, 67 A.B.A. J., May 1981, at 568, 572. Although this statistic is dated, little seems to have changed since 1981. *See* Peter L. Davis, *Rodney King and the Decriminalization of Police Brutality in America: Direct and Judicial Access to the Grand Jury as Remedies for Victims of Police Brutality When the Prosecutor Declines to Prosecute*, 53 Md. L.Rev. 271, 328–332 (1994) (analyzing and applauding Colorado's grand jury scheme but noting that the grand jury is underutilized and quoting the above passage).[6] The great preponderance of felony prosecutions are initiated in the county and district courts.

If the district attorney chooses to proceed by felony complaint filed in the county court, the governing procedures "shall be in accordance with and as required by the applicable provisions of the rules of criminal procedure promulgated by the supreme court of Colorado."[7] § 16–5–101(2), 8A C.R.S. (1986).

As accurately set out by the court of appeals, the rules of criminal procedure explicitly describe two courses of action the People can take after a felony complaint has been dismissed by the county court for lack of probable cause.

Under Crim. P. 5(a)(4)(IV), the People can appeal to the district court:

If from the evidence it appears to the county court that there is not probable cause to believe that the offense charged has been committed by the defendant, the county court shall dismiss the complaint and discharge the defendant. If the prosecutor believes the court erred in its finding of no probable cause, the prosecutor may appeal the ruling to the district court. Such error, if any, shall not constitute good cause for refiling.

Under Crim. P. 5(a)(4)(V), the People can seek to file a direct information in the district court:

Dismissal of a felony complaint following a preliminary hearing or dismissal without a preliminary hearing being held shall not be a bar to a subsequent filing of a direct information in the district court charging the defendant with the same offense.... The information shall be accompanied by a written statement from the prosecutor alleging facts which establish that evidence exists which for good cause was not presented by the prosecutor at the preliminary hearing. Within twenty days of defendant's first appearance following the direct filing the defendant may request an evidentiary hearing at which the prosecutor shall establish the existence of good

**6.** Notably, in 1977 the General Assembly enacted sweeping amendments to the grand jury statute which provided numerous safeguards against overreaching by the prosecution. For example, the 1977 amendments: (1) provided an avenue of review by the district court of the grand jury probable cause determination which historically was not subject to review, § 16–5–204(4)(k), 8A C.R.S. (1986); (2) barred reindictment unless the prosecution made a proper showing to the district court that there was additional evidence relevant to the inquiry, § 16–5–204(4)(e), 8A C.R.S. (1986); and (3) barred the prosecution from using the grand jury system as a discovery tool if the defendant had already been charged by information, indictment, or felony complaint, § 16–5–204(4)(h)(i)(I), 8A C.R.S. (1986). In addition, the 1977 amendments required that a reporter always be present during grand jury proceedings and that the proceedings be recorded. § 16–5–204(4)(f), 8A C.R.S. (1986); Crim. P. 6.4. The transcripts and notes of the grand jury, which are sealed, can be released at the district court's discretion. *Id.* Witnesses appearing before the grand jury can also request a copy of their testimony. § 16–5–204(4)(h), 8A C.R.S. (1986).

**7.** Under article VI, section 21 of the Colorado Constitution, we have been empowered to "promulgate rules governing practice and procedure in civil and criminal cases."

cause for the filing of the direct information.

Crim. P. 7(c)(2) reiterates that the prosecutor can file a direct information in the district court if:

Either a preliminary hearing was held and the court found probable cause did not exist or the case was dismissed without a preliminary hearing being held.... The information shall be accompanied by a written statement from the prosecutor alleging facts which establish that evidence exists which for good cause was not presented by the prosecutor at the preliminary hearing. Within twenty days of defendant's first appearance following the direct filing the defendant may request an evidentiary hearing at which the prosecutor shall establish the existence of good cause for the filing of the direct information.

Hence, no statutory or constitutional provision addresses the narrow issue now before us.

## B.

The court of appeals reached its conclusion by relying on three of our previous cases, *Holmes v. District Court*, 668 P.2d 11 (Colo. 1983), *People v. Freiman*, 657 P.2d 452 (Colo. 1983), and *Thomas v. County Court*, 198 Colo. 87, 596 P.2d 768 (1979). None of these cases addresses the precise issue now before us and we are not persuaded by the court of appeals' interpretation of these cases.

*Thomas*, the case primarily relied upon by the court of appeals, arose in very different circumstances. In *Thomas*, the defendant was indicted by the grand jury for perjury. On the defendant's motion, the district court dismissed the indictment for lack of probable cause. The People did not appeal the decision of the district court but rather proceeded to file a felony complaint against the defendant in the county court. The felony complaint comprised one charge of first degree perjury that was identical to two of the previously dismissed charges. No new evidence was submitted by the district attorney to the county court. We held that the district attorney could not take such action:

Once the indictment has been dismissed by the district court for lack of probable cause, the county court lacks jurisdiction to address the criminal complaint without permission of the district court, upon a showing of new or additional evidence.

*Thomas*, 198 Colo. at 90, 596 P.2d at 770. This decision was based on our interpretation of section 16–5–204(4)(e), 8 C.R.S. (1978), which provides:

Once a grand jury has returned no true bill based upon a transaction, set of transactions, event, or events, a grand jury inquiry into the same transaction or events shall not be initiated unless the court finds, upon a proper showing by the prosecuting attorney, that the prosecuting attorney has discovered additional evidence relevant to such inquiry.[8]

We construed this provision as protecting individuals "suspected of committing a crime from being harassed by the state." *Thomas*, 198 Colo. at 90, 596 P.2d at 770. Furthermore, we found that result to be in accord with basic principles of due process which prohibits the state, "with all its power, from repeatedly attempting without justification to prosecute a person, thereby disrupting his life and subjecting him to multiple court appearances and unwarranted anxiety." *Id.* Thus, we concluded that once a grand jury indictment has been dismissed for lack of probable cause by the district court, the People are barred from further prosecuting an individual absent new evidence which would establish probable cause and the permission of the district court.

In *People v. Freiman*, 657 P.2d 452 (Colo. 1983), the People initially filed a felony complaint in county court charging the defendant

---

8. This provision has not been amended since the *Thomas* decision and is now codified at § 16–5– 204(4)(e), 8A C.R.S. (1986).

with criminal attempt to commit sexual assault on a child. After a preliminary hearing, the county court dismissed the complaint for lack of probable cause. On the People's appeal, the district court affirmed the county court's dismissal and certiorari review was not pursued. Thereafter, the People sought to file a direct information in another division of the district court. After holding a hearing and determining that there was no new evidence, the second district court denied the request. The People appealed that decision. We then denied the People's appeal of the second district court decision and explained that because the People did not appeal the first district court's decision affirming the county court's finding of no probable cause, the People were barred from relitigating probable cause "by their request for leave to file a direct information in the district court." *Freiman*, 657 P.2d at 453. "Once the district court affirmed the ruling of the county court that no probable cause existed, that decision became a final judgment binding on the parties." *Id.* While we resolved the appeal on its merits, we noted that the rules of criminal procedure provided only two avenues to the People: appeal to the district court of the county court's dismissal if no preliminary hearing had been held and the case was one that could not be refiled under Crim. P. 7(c)(2), or filing of a direct information in the district court. We concluded that:

> If the county court dismisses a charge after holding a preliminary hearing under Crim. P. 5(a)(4), *the exclusive remedy available to the prosecution is to request leave to file a direct information in the district court.* If the district court denies the request, its decision may be appealed.

*Id.* at 454 (emphasis supplied).

Likewise, in *Holmes*, 668 P.2d 11, we reiterated this principle in the context of assessing whether the district court abused its discretion in granting the district attorney's motion to refile in the district court after the county court had dismissed a felony complaint for lack of probable cause. We exercised our supervisory power over the district courts in *Holmes* to explain what constitutes

new or additional evidence for purposes of a direct filing. However, both *Holmes* and *Freiman*, arose prior to the amendment of the rules of criminal procedure which now permit an appeal of the county court's determination of probable cause. Request for direct filing in the district court is no longer an "exclusive" remedy.

The pivotal issue in *Thomas* was refiling in the county court after a grand jury indictment had been dismissed for lack of probable cause by the *district court*. Refiling the Noline case with the *grand jury* after dismissal in the *county court* is not analogous to the procedure followed in *Thomas* and the different posture renders the *Thomas* analysis irrelevant here. At issue in *Thomas* were the relative roles played by the district court and the county court. The stated holding prohibited the county court from addressing the criminal complaint after the district court found no probable cause unless the district court consented and additional or new evidence was shown. 198 Colo. at 90, 596 P.2d at 770. In the hierarchy of authority, the county court is subordinate to the district court, *e.g.*, the county court's probable cause determination is appealable to the district court not vice-versa. Therefore, after a district court has dismissed a grand jury indictment, the prosecutor cannot seek, in essence, to appeal that decision to the county court. The logic would be circular and the result reached would be absurd if the prosecutor were permitted to proceed in a lower tribunal after a superior tribunal has issued its ruling because the lower tribunal's determination would be subject again to the superior tribunal's review. As correctly characterized by the People, the district court is the final trial level arbiter of probable cause, not the county court.

Here, the district attorney did not appeal but sought a grand jury indictment after the county court had dismissed Noline's felony charges. Although the grand jury's finding of probable cause is ultimately reviewable by the district court, the *Thomas* dilemma is not presented by this case because the grand jury has independent powers of an investiga-

tory nature that both the county court and district court lack. *See* § 16–5–204(3), 8A C.R.S. (1986).[9] Therefore, the grand jury is a distinct and unique body that cannot be equated with either of the two courts. Nothing in the *Thomas* decision either explicitly or implicitly precludes presentment to the grand jury after dismissal by the county court and prior to an appeal to the district court.

Similarly, the different posture between this case and both *Freiman* and *Holmes* renders the analyses in those cases inapplicable. A grand jury indictment was not before us in either *Freiman* or *Holmes*. As discussed above, the grand jury is a separate and distinct entity. Its actions do not raise any of the jurisdictional problems identified in *Thomas* as arising between the county court and the district court and, in *Freiman*, as arising between two divisions of the district court. *See People v. Cregar*, 172 Ill. App.3d 807, 122 Ill.Dec. 613, 621, 526 N.E.2d 1376, 1384 ("a finding of no probable cause at a preliminary hearing does not bar a subsequent indictment ... as the two charging procedures are not mutually exclusive") (citations omitted), *appeal denied*, 123 Ill.2d 561, 128 Ill.Dec. 894, 535 N.E.2d 405 (1988); *State v. Thomas*, 529 S.W.2d 379, 382 (Mo.1975) (no link between a preliminary hearing and a grand jury indictment). Last, although Crim. P. 5(a)(4) does set out the possibility of refiling in the district court, it does not explicitly nor implicitly preclude grand jury indictment. In fact, just as with the county court's probable cause determination, the grand jury's determination is ultimately reviewable by the district court, and can be dismissed if not supported by the record. *See* § 16–5–204(4)(k), 8A C.R.S. (1986).

The court of appeals recognized that the "exclusive" remedy language in *Freiman* is no longer applicable because the rules of criminal procedure have been amended to allow the additional remedy of an appeal of the county court's probable cause determination in the district court. *Noline*, 894 P.2d at 5. However, the court concluded that "neither the rules nor the statutes have been amended so as to authorize the commencement of grand jury proceedings in such circumstances." *Id.* While we agree that the rules and statutes were not amended to specifically permit commencement of a grand jury proceeding under these circumstances, the rules, statutes, cases, and constitutional provisions do not foreclose the course of action taken by the People in this case. Further, the course of action taken by the People here does not comprise undue harassment or unwarranted oppression of the accused individual.

### C.

The court of appeals construed our decisions in *Holmes, Freiman,* and *Thomas* as enunciating a "spirit and policy" that precluded presentment to the grand jury under the circumstances of this case. *Noline*, 894 P.2d at 4. Thus, the court of appeals concluded that:

> [T]he procedure adopted by the People was designed to circumvent Colorado's important public policy of nonharassment. If the People considered the county court's dismissal to be erroneous, they could have appealed from that order to the district court. Not having done so, they cannot recommence the prosecution of defendant, irrespective of the means chosen for such prosecution, without demonstrating that they possess further evidence not previously considered by the county court.

*Id.* at 5.

The court of appeals reads too much into these three cases and inappropriately ex-

---

9. Section 16–5–204(3), 8A C.R.S. (1986), sets forth in relevant part that:

> (3) Upon impanelment of each grand jury, the court shall give to such grand jury adequate and reasonable written notice of and shall assure that the grand jury reasonably understands the nature of:

> (a) Its duty to inquire into offenses against the criminal laws of the state of Colorado alleged to have been committed;
> (b) Its right to call and interrogate witnesses;
> (c) Its right to request the production of documents or other evidence.

pands what it describes as "Colorado's important public policy of nonharassment." It is important to recognize that the nature of the criminal justice system necessarily inconveniences those individuals who have been accused of crimes. From the accused's point of view, the criminal justice system always entails some level of harassment and oppression. That ordinary level of inconvenience is not what was addressed in our prior opinions. The prosecutorial conduct which must be scrupulously avoided is undue harassment and unwarranted oppression rising to the level of a due process violation. If the People follow the statutes and rules as set out by the General Assembly and this court, their actions cannot be characterized as harassing in the constitutionally prohibited sense. As a corollary, if the People act in bad faith by engaging in tactics which violate or seriously undermine the statutes or rules, such an action can constitute undue harassment and unwarranted oppression of the accused. Our decisions in *Holmes, Freiman,* and *Thomas* all address tactics undertaken in bad faith by the People that in one way or another constituted undue harassment or unwarranted oppression of the accused.

In *Thomas,* we explained that due process principles prevent the grand jury from further investigation after the grand jury issues a "no true bill" without a showing by the People that there is new or additional evidence that permits reindictment. We held that the same due process principles applied to the situation presented in *Thomas,* where the People sought to refile in the county court after the district court had ruled that there was not probable cause to support the grand jury indictment. The People were acting in bad faith by attempting to undermine the decision of the district court as the statutory final trial level arbiter of probable cause.

In *Holmes,* the People chose to present hearsay testimony instead of the informant's direct testimony at a preliminary hearing before the county court. Later, the People sought to file directly in the district court pursuant to Crim. P. 7(c)(2) and offered the informant's testimony as meeting that rule's requirement of new or additional evidence. We held that, as a matter of law, the requirements of Crim. P. 7(c)(2) are not met when the People seek to present the same evidence in a different form. Because we found a rule violation we did not have to reach any possible constitutional violations. Nevertheless, we noted in dicta that balancing the "right of the district attorney to prosecute criminal cases against the need to protect the accused from discrimination and oppression" weighs in favor of the accused when the People make a tactical decision not to present an informant at a preliminary hearing in the county court to avoid subjecting him to cross examination at that stage. *Holmes,* 668 P.2d at 14.

The *Holmes* decision is short and very little is disclosed about the underlying facts. Hence, we must be cautious in drawing too much from *Holmes* other than the general proposition that prosecutorial bad faith tactics can rise to the level of undue harassment and unwarranted oppression of the accused. Subsequently, we have routinely held that the prosecution cannot rely solely on hearsay evidence in a preliminary hearing when an eyewitness is available to testify. *People v. Horn,* 772 P.2d 108, 109 (Colo.1989) (citing cases). "However, we have also noted that hearsay evidence may constitute the great bulk of the prosecution's evidence in such proceedings." *Id.* (citing cases). We simply do not know the quantum of hearsay evidence versus direct evidence presented by the People in *Holmes.*

In *Freiman,* the People sought to circumvent one district court ruling by application to another division of the district court. We held that:

> The trial court properly applied the standard [balancing the rights of the district attorney to prosecute against the rights of the accused] to the facts of this case. The trial judge found that the actions of the district attorney in first appealing the county court decision unsuccessfully and then attempting to file a direct information had become "oppressive."

*Freiman,* 657 P.2d at 453.

As with *Holmes,* the *Freiman* decision is short and does not provide much back-

ground. However, it is clear that in *Freiman*, the dispositive consideration in reaching a finding of unwarranted oppression, was prosecutorial bad faith. Beyond that, not much can be drawn from the *Freiman* decision.

In contrast to the court of appeals, we conclude that the course of action taken here by the People does not constitute undue harassment or unwarranted oppression as evinced in *Holmes, Thomas,* and *Freiman*. Appeal of the county court's decision is permitted under Crim. P. 5(a)(4)(IV). The People have an alternate option: they can proceed by presentment to the grand jury. Either of these avenues is appropriate if the People cannot meet the requirements of seeking a direct filing in the district court under Crim. P. 5(a)(4)(V) or Crim. P. 7(c)(2). Both routes generate the same level of inconvenience for the accused individual; neither is more burdensome than the other. *See* § 16–5–101(2), 8A C.R.S. (1986) (the People can initiate a felony prosecution by felony complaint in district court, direct filing in district court, or return of an indictment by the grand jury). Procedurally, both routes have the same effect. Moreover, as we will discuss in the next part of this opinion, sound policy reasons support the conclusion allowing grand jury proceedings to go forward in these circumstances.

### D.

Other states have permitted presentment to the grand jury after court dismissal for insufficient probable cause:

A finding of no probable cause at a preliminary hearing is not generally regarded as a bar to presentation of the same charges to a grand jury. Several states have statutes or court rules stating that a finding of no probable cause at the preliminary hearing stage does not bar further proceedings, including the submis-

sion of an indictment to the grand jury. In states in which the matter is not addressed by statute, the courts have generally concluded that there is no reason to prohibit or restrict the submission of the charges to the grand jury.

1 Sara Sun Beale & William C. Bryson, *Grand Jury Law and Practice* § 6:41, Ch. 6 at 244 (1986) (footnotes and cases cited therein omitted).

For example, in *State v. Eaton*, 462 A.2d 502 (Me.1983), the Supreme Judicial Court of Maine held that the State is not barred from prosecuting an offender by grand jury indictment after dismissal of a complaint by the district court [10] because of the State's failure to proceed with a bind-over hearing. The complaint was originally filed in the district court. In its opinion, the court analogized to the situation where a complaint is dismissed by the district court for lack of probable cause. The court reasoned that the district court does not have jurisdiction to determine the defendant's guilt or innocence. It is limited to binding over to the superior court if it finds probable cause. Discharge under Maine's applicable rule of criminal procedure, Rule 5(e), does not act as an acquittal. "[T]herefore a dismissal of a complaint for that reason does not prevent subsequent prosecution for the same offense by indictment or otherwise." *Id.* at 503.

The Maine court noted, however, that:

The Superior Court is always vested with the power to dismiss an indictment that duplicates a Class C or higher complaint previously dismissed by the District Court, *if it clearly appears that the whole course of action by the prosecution amounts to harassment of the accused.*

*Id.* at 504 (emphasis supplied). The court was loath to lay down any "hard-and-fast rules" as to what constituted harassment.[11]

In *Burke v. Commonwealth*, 373 Mass. 157, 365 N.E.2d 811 (1977), the Supreme

---

10. In Maine, the district court is the equivalent of our county court. Maine's Superior Court is the equivalent of our district court for purposes of criminal prosecutions.

11. The court did cite some cases by way of example—cases in which prosecution was barred because the State failed to offer additional evidence. *Eaton*, 462 A.2d at 504–505. However,

Judicial Court of Massachusetts held that the Commonwealth was not barred from prosecuting by grand jury indictment after dismissal by the district court for lack of probable cause regardless of the fact that the evidence presented in the two forums was identical. After finding that the district court's finding of no probable cause was not a final determination of the issue, Massachusetts' highest court explained that when no appeal lies from the district court decision, "the grand jury is the only mechanism to ensure that the criminal proceeding has been terminated correctly." *Id.* 365 N.E.2d at 813. Without such recourse, "[i]t would leave a class of cases, many of which involve serious crimes, lost either to further prosecution or any appellate review." *Id.* In reaching this holding, the court concluded that it was "merely adher[ing] to the general rule followed in other jurisdictions that absent a right to appeal an adverse determination of probable cause, the prosecutor may seek a grand jury indictment." *Id.* 365 N.E.2d at 814 (citing cases).

We acknowledge that some cases, as for example *Burke,* permit the prosecution to proceed by grand jury indictment partially on the basis that no appeal lies from the trial court's finding of no probable cause. *Burke,* 365 N.E.2d 811; *see also People v. Kent,* 54 Ill.2d 161, 295 N.E.2d 710, 712 (1972) (probable cause finding has no finality and is neither appealable nor "in any way conclusive upon the prosecution"); *State v. Thomas,* 529 S.W.2d 379, 382 (Mo.1975) (permitting grand jury indictment after preliminary hearing discharge because: preliminary hearing does not place the accused in jeopardy, there is no link between the preliminary hearing and the indictment, and "since the state cannot appeal a dismissal at a preliminary hearing, it would frustrate public policy to deny the state a further opportunity to prosecute").

In Colorado, the General Assembly has provided an avenue of appeal from the county court's probable cause determination.

Nevertheless, we believe that absent a rule or statute to the contrary, the People are not precluded from pursuing the course of action taken here. Presentment to the grand jury is merely an alternate route that the People can opt to take. Moreover, the rationale for permitting such action remains applicable. Specifically, (1) no double jeopardy has attached because a preliminary hearing does not adjudicate guilt or innocence, therefore, discharge is not an acquittal, and (2) the grand jury is a unique body with unique characteristics, some of an independent nature and, hence, should be treated as an alternate route.

In *United States v. Kysar,* 459 F.2d 422 (10th Cir.1972), the Tenth Circuit considered whether the government could prosecute by grand jury indictment after a United States Commissioner had dismissed a complaint for lack of probable cause. The grand jury indictment was based on the identical evidence presented to the Commissioner. The court answered in the affirmative. It was persuaded by the unique characteristics of the grand jury:

> The preliminary examination has as its sole function the determination of whether sufficient evidence exists to warrant the defendant's detention. The grand jury, while endowed with this function, possesses an additional investigative function unique in the judicial process. The grand jury's investigative power may be exercised on its own motion; the results of the investigation may be the basis of an indictment. The examining magistrate, on the other hand, determines probable cause solely on the evidence presented to him at the hearing.

*Id.* at 423 (footnotes omitted). Furthermore, because there was no threat of double jeopardy, the court permitted presentment to the grand jury. *See also United States v. Dobbs,* 506 F.2d 445, 447 (5th Cir.1975) ("A dismissal for lack of probable cause at the preliminary

these cases were prefaced by the *"cf"* signal which signifies that the "cited authority supports a proposition different from the main proposition but sufficiently analogous to lend support." *The Blue Book* 23 (15 ed.1991).

hearing would not have prevented the subsequent indictment."); 1 Beale & Bryson, *Grand Jury Law and Practice* § 6:41, Ch. 6 at 243 (footnotes and cases cited therein omitted) ("Double jeopardy imposes no bar to resubmission because the grand jury has determined only that the evidence presented did not establish probable cause to indict the accused" and "[t]his preliminary determination is quite different from the trial jury's verdict on the ultimate issue of the defendant's guilt or innocence.").

Our conclusion is further reinforced by the number of other jurisdictions that have, more or less summarily, permitted grand jury indictments after preliminary hearing discharge. *See, e.g., De Anda v. City of Long Beach*, 7 F.3d 1418, 1422 (9th Cir.1993) ("a dismissal at a preliminary hearing has no preclusive effect under California law"); *People v. Uhlemann*, 9 Cal.3d 662, 108 Cal.Rptr. 657, 658, 511 P.2d 609, 610 (1973) ("It has long been the rule in this state that a magistrate's dismissal of criminal charges following a preliminary examination does not bar the People from either refiling the same charges before another magistrate or seeking an indictment based upon those charges."); *Wells v. Stynchcombe*, 231 Ga. 199, 200 S.E.2d 745, 747 (1973) (probable cause determination does not settle guilt or innocence of the accused therefore discharge by a civil court does not bar subsequent indictment); *State v. Sterling*, 376 So.2d 103, 104 (La.1979) ("discharge of a defendant after preliminary examination does not preclude the subsequent filing of an indictment, information, or affidavit against him for the same offense"); *State v. Rubek*, 220 Neb. 537, 371 N.W.2d 115, 118 (1985) (stating, in the context of a second filing in the district court after discharge in county court on identical offense, that "it would appear to be the majority rule throughout the United States that an examining magistrate's refusal to bind a defendant over does not bar refiling the identical charges" and rejecting argument that ability to appeal county court's determination curtails prosecutor's right to refile); *State v. Boykin*, 113 N.J.Super. 594, 274 A.2d 620, 621 (Law Div.1971) ("Even if the municipal

magistrate finds lack of probable cause at the preliminary hearing and dismisses the complaint, the defendant may still be indicted and convicted for the same offense" because indictment procedure supersedes complaint procedure); *People v. Hodge*, 53 N.Y.2d 313, 441 N.Y.S.2d 231, 234, 423 N.E.2d 1060, 1063 (1981) ("though a preliminary hearing results in dismissal, [the prosecution] may nevertheless succeed in obtaining an indictment at the hands of the Grand Jury"); *People ex rel. Hirschberg v. Close*, 1 N.Y.2d 258, 152 N.Y.S.2d 1, 3, 134 N.E.2d 818, 819 (1956) (although proceedings under magistrate were defective "[n]evertheless, the Grand Jury acting within its own powers did not depend for its authority and that authority could not be cut down by any previous magistrate's hearing"); *State v. Mitchell*, 42 Ohio St.2d 447, 329 N.E.2d 682, 684–85 (1975) (a grand jury indictment may still be sought after a defendant is discharged on a preliminary hearing by a magistrate).

■ Thus, we hold that, after dismissal by the county court for lack of probable cause, the People are faced with three options other than dropping the charges. The People can: (1) appeal the probable cause determination to the district court; (2) seek to file a direct information in the district court subject to that court's discretion; or (3) seek a grand jury indictment. However, if the People choose to proceed by grand jury indictment after the county court's dismissal, they cannot subsequently or simultaneously appeal the county court's determination. Prosecutorial pursuit of both courses of action would constitute undue harassment and unwarranted oppression of the accused. In essence, presentment to the grand jury is simply an alternate route to an appeal of the county court's probable cause determination.

### III.

For the foregoing reasons, we reverse the decision of the court of appeals and hold that the People can prosecute by grand jury indictment after dismissal by a county court on a preliminary hearing for lack of probable cause.

LOHR, J., dissents, and KIRSHBAUM and SCOTT, JJ., join in the dissent.

· Justice LOHR dissenting:

This case presents the issue of whether the People may prosecute a defendant by grand jury indictment after a county court previously dismissed a felony complaint charging the same offenses because the People failed to establish probable cause at a preliminary hearing. The district court granted the defendant's motion to dismiss the grand jury indictment, holding that the People did not comply with Crim. P. 5 or 7, and that those two rules of criminal procedure provided the sole avenues of relief from a county court's dismissal of criminal charges for lack of probable cause. On appeal, the Colorado Court of Appeals affirmed. *People v. Noline*, 894 P.2d 1, 5 (Colo.App.1994).

On certiorari review in this court, the majority holds that the People can seek indictment by a grand jury after a county court's determination of no probable cause as an "alternate route" to a district court appeal of the county court's decision. Maj. op. at 1267. Because our rules of criminal procedure provide for no such "alternate route," and because our prior cases strongly indicate for good reasons that none is available, I respectfully dissent to the majority opinion. I agree with the court of appeals' interpretation of the governing rules and case law, and would affirm the judgment of that court. *See Noline*, 894 P.2d at 1–5.

I.

On June 21, 1992, Raymond C. Noline broke into the victim's home. Based on this conduct and the events that ensued, the People filed a complaint against Noline in the Denver County Court, charging one count of criminal attempt to commit first degree sexual assault pursuant to sections 18–2–101, 8B C.R.S. (1986), and 18–3–402, 8B C.R.S. (1986), and one count of second degree burglary pursuant to section 18–4–203, 8B C.R.S. (1986). At a preliminary hearing on September 16, 1992, the People presented only one witness in support of the complaint. That witness, Detective Greg Lotspeich, testified regarding his interview of Noline. De-

tective Lotspeich testified that Noline had a delusional hope for a healthy relationship with the victim, but that Noline's fantasy was shattered when he confronted the partially unclothed victim in her bedroom after breaking into her home and removing his own clothes:

> Q. All right. And when you say he changed his mind, did he specifically indicate to you that he changed his intentions or that things worked out in a way different than he anticipated?

> A. He stated that things had worked out differently, because she was now scared. She tried to run past him, and he grabbed her. He said, "I'm not going to hurt you." She hit him in the head with a high-heeled shoe, which caused his head to bleed, caused a laceration to his head. She then ran out of the house via the front door, screaming for help. He, then, ran out the back door.

Detective Lotspeich reinforced this account of the incident at a later point during the preliminary hearing:

> Q. Mr. Noline told [the victim] that he was not going to hurt her, correct?

> A. Correct.

> . . . .

> Q. Mr. Noline did not pursue her, did he?

> A. No, he did not.

The People chose not to present any testimony by the victim at the preliminary hearing.

After hearing Detective Lotspeich's testimony, the presiding judge held that the People had not presented evidence of the intent necessary to sustain the attempted first degree sexual assault or burglary counts. For this reason, the judge dismissed those counts for lack of probable cause but held that there was sufficient probable cause to sustain a criminal trespass charge:

> At the time the defendant broke in, it had to have been for the purpose of sexually assaulting the victim. If he entered in

the delusional belief that his advances would be welcomed, I do not find that he had the requisite intent at the time of entry into the premises. I further do not find that he had the intent to violently assault or meet any of the other requirements for sexual assault. I find that he went in for a sexual liaison, one that is delusional and one which a reasonable person would not expect.

I don't find that his interpretation of the facts is reasonable, but I'm not here to decide that. I'm here to decide whether or not the defendant committed a crime by conduct that was accompanied by the requisite intent, and I don't find that the requisite intent was there.

I find that there was an intent to enter the premises without the permission of the homeowner and to remain upon that premises. I find that it fits first-degree trespass; I do not find that it fits burglary or attempted sexual assault.

After a recess, the judge explained the basis for his admittedly reluctant decision:

The only evidence offered by the People with regard to intent was that offered during the preliminary hearing, in which the defendant believed that he would have consensual sex, and he entered for that purpose.... I found that the only evidence offered by the People with regard to intent showed a lack of intent to commit a crime....

. . . .

... From the evidence, right up to the point at which—right up to the point at which she confronted him, he believed that he was going to succeed; right up to that point. And that is the point at which he realized he wasn't going to proceed, and he made no attempt then to force himself upon her; none whatsoever. The statement that he grabbed her by the arm as she went by, I determined, in the light

most favorable to the People, was to calm her and tell here [sic] that he wasn't doing to hurt her, and that's how I viewed that.... I find that the defendant lacked the requisite intent, and that was my ruling.

In view of the county court's ruling, the People had two explicit options under this court's rules of criminal procedure. *See* maj. op. at 1258. First, they could appeal the decision of the county court pursuant to Crim. P. 5(a)(4)(IV). Second, they could file a direct information in the district court pursuant to Crim. P. 5(a)(4)(V) if they could establish that "evidence exists which for good cause was not presented by the prosecutor at the preliminary hearing." Crim. P. 5(a)(4)(V).[1] However, the People chose instead to present the matter to a grand jury the next day, and then to move for dismissal of the criminal trespass count, which the district court granted based upon the grand jury's indictment of Noline on charges arising out of the same criminal episode.

The People presented very different evidence to the grand jury. *But see* maj. op. at 1258 ("Although the victim testified before the grand jury and did not testify at the preliminary hearing, the People do not assert that they presented additional or new evidence to the grand jury that was not presented to the county court."). The grand jury heard testimony by the victim, who gave an account of the incident involving Noline that differed dramatically from the comparatively benign version of events to which Detective Lotspeich testified at the preliminary hearing. The victim testified:

A. I said, "What are you doing in my house?" He immediately bounced across the bedroom floor and grabbed me by the wrists. He didn't say anything. It was real obvious what his intent was, though. He grabbed both my wrists.

Q. What did—how would you describe his demeanor that would lead you to believe what his intentions were?

---

**1.** Crim. P. 7(c)(2) and 7(h)(4) provide like alternatives of refiling or appeal in the event a direct information filed in district court is dismissed for lack of probable cause following a preliminary hearing.

A. He—he didn't say anything—he just grabbed me. And it seemed—he was naked. He had waited until I was getting undressed. It was obvious that his purpose was to rape me.

. . . .

Q. What happened [after you hit him with your shoe]?

A. Well, there—I had a knife that I keep on the other side of the bed. I was on the wrong side of the bed from it. I tried to crawl over the bed to get it. He grabbed me again from the back. I decided at that point that I could get away from him. . . . And I got out the bedroom door, and tried to get down the hall. He kept trying to hang on to me from behind.

. . . .

Q. Where was he during this whole time [that you were attempting to proceed the thirty feet from the bedroom to the front door]?

A. I was literally dragging him down the hall. I was—most of the time I was on my hands and knees. And he was trying to hang on to me—on to me and keep me from doing that.

Q. When he was hanging on to you, what part of your body was he hanging on to?

A. The waist or the hips.

Q. Did he make any statements to you?

A. Yes, he did.

Q. What did he say?

A. He said, "I could sure use some cooperation."

The victim continued to testify that Noline's intentions were "quite clear," in that "[h]e had broken into the house to rape me." The grand jury indicted Noline for attempt to commit first degree sexual assault and for burglary, specifically relying on the victim's account of the incident. Noline objected by filing a motion to dismiss with the district court claiming that the People had not complied with the procedures for an appeal of a county court's probable cause determination or a filing of a direct information in district court, and that the People had presented new evidence to the grand jury without any showing of good cause.

The district court granted Noline's motion to dismiss, based on the People's failure to adhere to Crim. P. 5 and 7. On appeal, the Colorado Court of Appeals affirmed the district court's dismissal of the grand jury indictment. *Noline*, 894 P.2d at 5. Relying on our rules of criminal procedure, the court of appeals held:

> [O]nce the People fail to establish the existence of probable cause to believe that a defendant has committed an offense, such a defendant cannot be subjected to subsequent refilings, unless the People can demonstrate the existence of additional evidence not previously considered [for good cause].

*Id.* at 4. On certiorari review, the majority now holds that "absent a rule or statute to the contrary, the People are not precluded from pursuing the course of action taken here," maj. op. at 1266, and concludes that "presentment to the grand jury is simply an alternate route to an appeal of the county court's probable cause determination," maj. op. at 1267–1268. I disagree.

II.

I agree with the majority that "[a]s accurately set out by the court of appeals, the rules of criminal procedure explicitly describe two courses of action the People can take after a felony complaint has been dismissed by the county court for lack of probable cause." Maj. op. at 1260. First, the People can appeal the county court's probable cause determination to the district court. Crim. P. 5(a)(4)(IV); maj. op. at 1260–1261. Second, the People can seek to file a direct information in the district court. Crim. P. 5(a)(4)(V); maj. op. at 1260–1261; *see* Crim. P. 7(c)(2). Furthermore, the People may not file a direct information in the district court after a count has been dismissed by the county court unless "the information [is] ac-

companied by a written statement from the prosecutor alleging facts which establish that evidence exists which for good cause was not presented by the prosecutor at the preliminary hearing." Crim. P. 5(a)(4)(V); *see* Crim. P. 7(c)(2).[2]

However, I cannot agree with the majority's conclusion that the People can refile charges through an "alternate option" or "alternate route" that our rules do not "specifically permit," maj. op. at 1265, 1267, 1263, simply because those rules "do not foreclose the course of action taken by the People in this case," maj. op. at 1263. The legislature explicitly provided that "[t]he procedures governing felony complaints filed in the county court ... *shall be in accordance with and as required by the applicable provisions of the rules of criminal procedure* promulgated by the supreme court of Colorado." § 16–5–101(2), 8A C.R.S. (1986) (emphasis added). In this case, the People did not comply with either Crim. P. 5(a)(4)(IV) or Crim. P. 5(a)(4)(V), which respectively provide that upon a county court's determination of lack of probable cause, the people can appeal the ruling to the district court *or* refile a direct information in the district court charging the defendant with the same offense after showing that evidence exists which for good cause was not presented at the preliminary hearing. We should not permit parties to craft their own "alternate" rules of criminal procedure, *see* maj. op. at 1265, 1267, when this court has not explicitly forbidden such prac-

tices but has provided the parties with sufficient procedural options.[3]

My position finds support in the precedent of this court, and I further disagree with the majority's belabored interpretation of our analogous case law. *See* maj. op. at 1261–1265. In *Holmes v. District Court of Summit County*, 668 P.2d 11, 13 (Colo.1983), a county court dismissed felony complaints against two defendants for lack of probable cause after the prosecution "made a tactical decision not to call the informant as a witness at the preliminary hearing." The district attorney subsequently obtained district court permission to refile the identical charges by an information in that court based on the district attorney's assertion that the informant's testimony would constitute new and additional evidence. This court issued a rule to show cause and later made that rule absolute, thereby reversing the district court's decision to permit the filing of the charges. We held that "[w]hen the county court dismisses a felony complaint after holding a preliminary hearing pursuant to Crim. P. 5(a)(4)(IV), the sole remedy available to the prosecution is requesting permission of the district court to file a direct information in accordance with Crim. P. 7(c)(2)." *Id.* at 13–14 (footnote omitted).[4] We stated that "[t]he district attorney candidly admits he made a tactical decision not to call the informant and subject him to cross-examination. The People, rather than the [defendants], must bear the burden of that decision." *Id.* at 14–15.

---

**2.** Similarly, the General Assembly chose to prohibit the refiling of a complaint before a second grand jury absent a showing that the People discovered additional evidence subsequent to the initial grand jury's decision not to indict:

Once a grand jury has returned a no true bill based upon a transaction, set of transactions, event, or events, a grand jury inquiry into the same transaction or events shall not be initiated unless the court finds, upon a proper showing by the prosecuting attorney, that the prosecuting attorney has discovered additional evidence relevant to such inquiry.

§ 16–5–204(4)(e), 8A C.R.S. (1986); *see also People v. Noline*, 894 P.2d 1, 3 (Colo.App.1994).

**3.** *See also People v. Noline*, 894 P.2d 1, 5 (Colo. App.1994) ("If the People considered the county court's dismissal to be erroneous, they could

have appealed from that order to the district court. Not having done so, they cannot recommence the prosecution of defendant, irrespective of the means chosen for such prosecution, without demonstrating that they possess further evidence not previously considered by the county court [for good cause]. Because they admittedly failed to make such a demonstration, the trial court properly prohibited their further prosecution of defendant.").

**4.** The alternative remedy of appeal was not adopted as part of our rules of criminal procedure until after *Holmes* was decided. *See* Crim. P. 5, 7B C.R.S. (1995 Supp.) (noting that the rule was amended March 31, 1988, effective January 1, 1989).

The basis for our decision was that the sanctioning of refilings without requiring compliance with our rules of criminal procedure would (1) encourage the People to present as little evidence as possible at preliminary hearings by providing the People with the security of two bites at the apple, (2) unnecessarily tax already strained judicial resources, (3) unfairly subject the accused to oppression and discrimination, and (4) create little incentive for the People to comply with the rules governing preliminary hearings. *Id.* at 15. I agree with the court of appeals that *Holmes* is applicable to the case at hand. *Noline*, 894 P.2d at 5. *But see* maj. op. at 1262, 1264–1265.

The court of appeals' decision in this case is also in accordance with *Thomas v. County Court*, 198 Colo. 87, 596 P.2d 768 (1979), and *People v. Freiman*, 657 P.2d 452 (Colo.1983). *Noline*, 894 P.2d at 4–5. *But see* maj. op. at 1261–1265. In both of those cases, the prosecution responded to a determination of lack of probable cause by pursuing procedural options for which our rules of criminal procedure did not explicitly provide. In *Thomas,* 198 Colo. at 90, 596 P.2d at 770, the issue was "whether a district attorney can file a criminal complaint in a county court charging a defendant with the identical offense for which he has previously been indicted in the district court, where that indictment was dismissed by the district court for lack of probable cause." We held that such a procedure would violate a defendant's due process rights, and that our rules of criminal procedure at the time allowed for such refilings only after the prosecution affirmatively asserted and a district court found that new or additional evidence existed which might establish probable cause. *Id.* at 90–91, 596 P.2d at 770–71. Similarly, in *Freiman,* 657 P.2d at 453, the People unsuccessfully appealed a county court determination of lack of probable cause to the district court. The question before this court was whether the People could "circumvent the first ruling of the district court" by refiling the identical charges in another division of the district court, without alleging that new or additional

evidence was available. *Id.* This court rejected the People's tactic as amounting to " 'consecutive bites of the apple,' " holding that the remedies available to the prosecution when a case is dismissed in the county court for lack of probable cause are limited to those procedures for which our rules of criminal procedure explicitly provide. *Id.* at 453–54 (quoting trial judge's ruling).

*Holmes, Freiman,* and *Thomas* and the rules of criminal procedure upon which they are based reflect the importance that we have attached to preliminary hearings. A preliminary hearing is an early screening device conducted before an impartial judge to assure that only those charges for which the prosecution has evidence rising to the level of probable cause shall be permitted to proceed to trial. *E.g., Holmes,* 668 P.2d at 15; *Maestas v. District Ct.,* 189 Colo. 443, 446, 541 P.2d 889, 891 (1975); *People ex rel. Farina v. District Ct.,* 185 Colo. 118, 121, 522 P.2d 589, 590 (1974). Preliminary hearings conserve judicial resources and protect an accused from being forced to defend against charges for which the prosecution's evidence is scant. In order to serve these purposes, the prosecution must be required to demonstrate at the preliminary hearing that probable cause exists. If the court errs in determining that probable cause is lacking, the error can be rectified on appeal. If additional evidence exists or is later discovered, and if the prosecution can demonstrate good cause why it was not presented at the preliminary hearing, charges may be refiled. Until today, however, the prosecution has not been permitted to withhold evidence available at the preliminary hearing with the assurance that if a charge is dismissed for lack of probable cause the withheld evidence can then be presented to a grand jury and an indictment can be obtained on the basis of that evidence. In my opinion this new avenue for reactivation of dismissed charges seriously undercuts the usefulness of preliminary hearings as a screening device and is inconsistent with our rules of criminal procedure, the cases interpreting and applying those rules, and the spirit and policy underlying those cases and rules.

## III.

The majority also relies on decisions from other jurisdictions to support its conclusion that even absent a showing of new or additional evidence that was not previously presented for good cause, a grand jury indictment is permissible after a county court's dismissal of the same criminal charges for lack of probable cause. Maj. op. at 1265–1267. I agree with the court of appeals' determination that these cases "are not persuasive as to the manner in which our statutes and rules should be interpreted." *Noline,* 894 P.2d at 5.

First, Colorado specifically provides for appellate review of a judicial dismissal of charges for lack of probable cause. *See* Crim. P. 5(a)(4)(IV); Crim. P. 7(h)(4); § 16–12–102, 8A C.R.S. (1986 & 1995 Supp.). In those jurisdictions that do not provide for such appellate review, resubmission of previously dismissed charges to the grand jury may be the only method of remedying an improper judicial determination of a lack of probable cause. *Burke v. Commonwealth,* 373 Mass. 157, 365 N.E.2d 811, 813 (1977) ("Where, as here, no appeal lies from the District Court decision, the grand jury is the only mechanism to ensure that the criminal proceeding has been terminated correctly."). Otherwise, "[i]t would leave a class of cases, many of which involve serious crimes, lost either to further prosecution or any appellate review." *Id.* 365 N.E.2d at 813. For example, in *Burke v. Commonwealth,* and the cases cited therein, the applicable state laws did not provide for appellate review of a court's finding of a lack of probable cause. *Id.* 365 N.E.2d at 814. The Supreme Judicial Court of Massachusetts in *Burke* limited its decision in holding that "*absent a right to appeal an adverse determination of probable cause,* the prosecutor may seek a grand jury indictment." *Id.* 365 N.E.2d at 814 (emphasis added). Because Colorado law specifically provides the People with the right to appellate review of a judicial determination of a lack of probable cause, the rationale relied upon in states such as Massachusetts does not apply. *But see* maj. op. at 1266

("We acknowledge that some cases, as for example *Burke,* permit the prosecution to proceed by grand jury indictment partially on the basis that no appeal lies from the trial court's finding of no probable cause."), 24 ("In Colorado, the General Assembly has provided an avenue of appeal from the county court's probable cause determination. Nevertheless, we believe that absent a rule or statute to the contrary, the People are not precluded from pursuing the course of action taken here."). Accordingly, the majority's reliance on cases from other jurisdictions which do not provide such appellate review is misplaced. *See* maj. op. at 1266.

Second, the majority overlooks the markedly different role and power of grand juries in the federal system in applying federal caselaw to the question of Colorado criminal procedure before us today. The majority cites several federal cases for the proposition that "the grand jury is a unique body with unique characteristics, some of an independent nature," maj. op. at 1266, such that "presentment to the grand jury is simply an alternate route to an appeal of the county court's probable cause determination," maj. op. at 1267. In Colorado, section 16–5–204(4)(k), 8B C.R.S. (1986), allows the district court to "dismiss any indictment of the grand jury if such district court finds ... that the grand jury finding of probable cause is not supported by the record." The court of appeals highlighted the importance of this provision:

> [I]n the federal system, unlike the procedure established by § 16–5–204(4)(k), a court has no authority to go behind a grand jury indictment to determine whether such indictment is based on probable cause; the return of the indictment constitutes a conclusive determination that probable cause exists. Hence, a [United States] [C]ommissioner's determination to the contrary cannot preempt the grand jury's function.

*Noline,* 894 P.2d at 5 (citing *United States v. Kysar,* 459 F.2d 422 (10th Cir.1972)). In other words, grand jury proceedings in Colorado are not truly independent and are subject to appellate review in the district courts. It is anomalous to characterize "presentment

to the grand jury [as] simply an alternate route to [a district court] appeal," maj. op. at 1267, where the grand jury determination itself is subject to appeal in the district court.

### IV.

In this case, the People chose not to appeal the county court's probable cause determination to the district court pursuant to Crim. P. 5(a)(4)(IV), and the People asserted at oral argument before us that they did not attempt to refile the charges in district court pursuant to Crim. P. 5(a)(4)(V) because the "requirement that we show good cause why we had not presented [the new evidence] before . . . was problematic." I would hold that the procedure followed by the People is not permitted by our rules of criminal procedure, and for the aforementioned reasons, I respectfully dissent to the majority opinion.

KIRSHBAUM and SCOTT, JJ., join in this dissent.